SKS #363863

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CENTURY SURETY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 04 C 7997 |
| ) | |
| JOHN B., INC. d/b/a JOHN ) | Judge Manning |
| BARLEYCORN; J.B. at Clark Inc.; ) | |
| and MATTHEW SIRMON ) | Magistrate Judge Nolan |
| Defendants. ) | |

## NOTICE OF FILING

To: John B., Inc. d/b/a John Barleycorn
c/o Joseph J. Griseta, Registered Agent
55 W. Wacker Drive, Suite 702
Chicago, Illinois 60601

PLEASE TAKE NOTICE that on the **25th** day of **July 2005,** there was mailed to be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the attached: **First Amended Complaint for Declaratory Judgment,** a copy of which is attached hereto and served upon you.

Tressler, Soderstrom, Maloney & Priess

By: _____
One of the Attorneys for Century Surety
Company

Michael J. Duffy
D.J. Sartorio
Shevonn K. Smith
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 627-4000
(312) 627-1717 fax

## PROOF OF SERVICE

The undersigned, being first duly sworn on oath, deposes and states that she served the foregoing Notice of Filing and the document(s) referred to therein by mailing a copy to the attorney(s) shown above at their address(es) shown above (*See Attached Service List*), and deposited same in the U.S. Mail at 233 South Wacker Drive, Chicago, Illinois on the ___ day of July 2005.

SUBSCRIBED and SWORN to before me
this ___ day of _____ 2005.

_____
Notary Public

OFFICIAL SEAL
DEBRA A THORNE
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. APR. 3,2006

2

SKS#269909

FILED

JUL 2 5 2005s207-4    NF̃i

JUL 25 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CENTURY SURETY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No.: 04 C 7997 |
| | ) |
| JOHN B., INC. d/b/a JOHN | ) *MANNING* |
| BARLEYCORN; J.B. at Clark Inc.; and | ) |
| MATTHEW SIRMON | ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES CENTURY SURETY COMPANY ("Century"), as Plaintiff, by and through its attorneys, Tressler, Soderstrom, Maloney & Priess, and for its First Amended Complaint for Declaratory Judgment against JOHN B. INC. d/b/a JOHN BARLEYCORN ("Barleycorn"); J.B. AT CLARKS ("JB"); and MATTHEW SIRMON ("Sirmon"), states as follows:

### STATEMENT OF CASE

1.     This action seeks a declaration that Century owes no insurance coverage obligations to the Defendants Barleycorn and JB in connection with a lawsuit pending in the Circuit Court of Cook County, Illinois, Law Division, styled as <u>Matthew Sirmon v. John B. Inc., d/b/a John Barleycorn and J.B. at Clark, Inc.</u>, Case No. 04L12564 (the "<u>Sirmon</u> lawsuit").

### PARTIES

2.     Century is an insurance company existing under the laws of Ohio with its principal place of business in Ohio.

3.     Barleycorn is an Illinois corporation with its principal place of business in Illinois. Barleycorn is a restaurant and seller of alcoholic beverages.

4.     JB is a Illinois corporation with its principal place of business in Illinois. JB is a restaurant and seller of alcoholic beverages.

5.     Upon information and belief, Sirmon is a citizen of Illinois and a resident of Cook County. Sirmon is joined herein as an interested and necessary party to be bound by the judgment rendered by this Court.

6.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this is a civil action founded on diversity of citizenship including Defendants, Barleycorn, JB, and Sirmon who all reside within this judicial district and since it involves liability insurance coverage for an action pending within the boundaries of this District.

## THE CENTURY INSURANCE POLICY

8.     Century issued to Barleycorn and JB a commercial liability policy bearing policy No. CCP278975, with an effective policy period from October 12, 2003 to October 12, 2004. (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit A1.

9.     The Policy contains liability coverage for "Bodily Injury and Property Damage," which provides, in part, as follows:

    **1.     INSURING AGREEMENT**

        a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. ...

2

b.    This insurance applies to "bodily injury" and "property damage" only if:

1.    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

2.    The "bodily injury" or "property damage" occurs during the policy period. ...

(See, Exhibit A1).

10.    The Policy contains the following definitions:

**DEFINITIONS**

1.    "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. ...

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(See, Exhibit A1).

11.    The Policy contains the following exclusions:

**2.    Exclusions**

This insurance does not apply to:

**a.    Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(See, Exhibit A1)

12.    The "Special Exclusions and Limitations Endorsement" modifies the insurance provided under the Commercial `General Liability Coverage Part A and contains the following additional exclusions and provisions:

This insurance does not apply to:

**4.**     **Criminal Acts**

"Bodily injury" or "property damage" arising out of or resulting from a criminal act committed by or at the direction of any named insured or additional insured.

**5.**     **Punitive, Exemplary Treble Damages or Multipliers of Attorney's Fees**

Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of an insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorney's fees statutorily awarded to the prevailing party.

**9.**     **Failure To Maintain Secure or Safe Premises**

Claims arising out of, caused by, resulting from, or alleging, in whole or in part, any insured or additional insured's failure to thwart, foil, avoid, hinder, stop lessen or prevent any attack, fight, assault, theft, or crime. The company has no obligation to defend or indemnify any such claims.

**10.**     **Liquor Liability**

Exclusion c., Liquor Liability of Coverage A. 2.Exclusions, is deleted in its entirety and replaces with the following:

We have neither a duty to defend nor a duty to indemnify any insured if any proximate or contributing cause of an occurrence arises out of:

a.     Causing or contributing to the intoxication of any person:

b.     Furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c.     Violation of any statue, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies to all insured regardless of whether you are in the business of manufacturing, distributing, selling, or serving or furnishing alcoholic beverages. There is no duty to defend any aspect of the claim or "suit" and this insurance does not apply.

A.  It is agreed that SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS is changed as follows:

   1.  ITEM 4. Other Insurance is deleted and entirely replaced by the following:

**4.  Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligation are limited as follows:

a.  This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, umbrella, or on any other basis; unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

b.  When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

c.  When this insurance is excess, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

   (1)  The total amount that all such other insurance would pay for the loss in absence of this insurance; and

   (2)  The total of all deductible and self insured amounts under all that other insurance.

5

(See, Exhibit A1)

13.     The Policy also contains an Endorsement that has an "Assault and Battery"

exclusion, which states as follows:

**EXCLUSION – ASSAULT AND BATTERY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.     This insurance does not apply to "bodily injury", "property damage", or "personal advertising injury" arising out of or resulting from:

    (a)     any actual, threatened or alleged assault or battery;

    (b)     the failure of any insured or anyone else for whom any insured is or could be held legally liable to prevent or suppress any assault or battery;

    (c)     the failure of any insured or anyone else for whom any insured is or could be held legally liable to render or secure medical treatment necessitated by any assault or battery;

    (d)     the rendering of medical treatment by any insured or anyone else for whom any insured is or could be held legally liable that was necessitated by any assault or battery;

    (e)     the negligent:

        (i)      employment;

        (ii)     investigation;

        (iii)    supervision;

        (iv)    training;

        (v)     retention;

2.     We shall have no duty to defend or indemnify any claim, demand, suit, action, litigation, arbitration, alternative dispute resolution or other judicial or administrative

proceeding seeking damages, equitable relief, injunctive relief, or administrative relief where:

(a)    any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or batter-related cause.

(b)    any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury.

(c)    any actual or alleged injury arises out of assault or battery as a concurrent cause of injury, regardless of whether the assault or battery is the proximate cause of injury.

3.    For the purposes of this endorsement the words assault and battery are intended to include, but are not limited to, sexual assault.

(See, Exhibit A1)

14.    The Policy contains an Endorsement that has an "Abuse or Molestation" exclusion which states as follows:

**ABUSE OR MOLESTATION EXCLUSION**

The Following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1.    The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2.    The negligent:

a.    Employment;

b.    Investigation;

c.      Supervision;

d.      Reporting to the proper authorities, or failure to so report; or

e.      Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1 above.

(See, Exhibit A1)

## THE UNDERLYING ACTION

15.     Matthew Sirmon filed the <u>Sirmon</u> lawsuit against Barleycorn and JB on or about June 30, 2005. A true and correct copy of the complaint in the <u>Sirmon</u> lawsuit is attached hereto as Exhibit B1.

## THE CONTROVERSY

16.     Barleycorn and JB have demanded that Century defend and indemnify them with respect to the <u>Sirmon</u> lawsuit.

17.     Century denies that it owes Barleycorn or JB any defense or indemnity obligations with respect to the <u>Sirmon</u> lawsuit.

18.     An actual and justiciable controversy exists between Century, Barleycorn, JB and/or Sirmon as to the availability of insurance coverage with respect to the <u>Sirmon</u> lawsuit, and pursuant to the Federal Declaratory Judgment Act, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief that may be necessary.

## COUNT I – NO "OCCURRENCE" ALLEGED

19.     Century incorporates the allegations within Paragraphs 1 through 18 as if fully set forth herein as Paragraph 19.

20. The Complaint filed in the <u>Sirmon</u> lawsuit does not allege "bodily injury" caused by an "occurrence" as those terms are defined in the Policy. (See, Exhibit A1).

21. Century thus does not owe Barleycorn or JB any defense or indemnity obligations for the <u>Sirmon</u> lawsuit.

WHEREFORE, CENTURY prays that this Honorable Court will enter judgment in its favor and against BARLEYCORN and JB, declare that CENTURY does not owe any duty to defend or indemnify BARLEYCORN or JB in the <u>Sirmon</u> lawsuit, and award CENTURY such other and further relief as the Court deems just and proper, including an award of costs.

### COUNT II – "EXPECTED OR INTENDED INJURY" EXCLUSION APPLIES

22. Century incorporates the allegations set forth in Paragraphs 1 through 18 as if fully set forth herein as Paragraph 22.

23. The Policy excludes coverage for "bodily injury" which is expected or intended from the standpoint of the insured. (See, Exhibit A1).

24. To the extent that the <u>Sirmon</u> lawsuit alleges "bodily injury" caused by an "occurrence" (which Century denies), such "bodily injury" was expected or intended from the standpoint of Barleycorn.

25. The Policy therefore excludes coverage for the <u>Sirmon</u> lawsuit.

26. Accordingly, pursuant to the Policy, Century owes no defense or indemnity obligation to Barleycorn or JB with respect to the <u>Sirmon</u> lawsuit.

WHEREFORE, CENTURY prays that this Honorable Court will enter judgment in its favor and against BARLEYCORN and JB, declare that CENTURY does not owe any duty to defend or indemnify BARLEYCORN or JB in the <u>Sirmon</u> lawsuit, and award CENTURY such other and further relief as the Court deems just and proper, including an award of costs.

9

## COUNT III – "CRINIMAL ACTS" EXCLUSION APPLIES

27.     Century incorporates the allegations set forth in Paragraphs 1 through 18 as if fully set forth herein as Paragraph 27.

28.     The Policy excludes coverage for "bodily injury" or "property damage" arising out of or resulting from a criminal act committed by or at the direction of any named insured or additional insured.

29.     To the extent that the Sirmon lawsuit alleges "bodily injury" caused by an "occurrence" (which Century denies), such "bodily injury" arises from a criminal act committed by or at the direction of a named insured or additional insured.

30.     The Policy therefore excludes coverage for the Sirmon lawsuit.

31.     Accordingly, pursuant to the Policy, Century owes no defense or indemnity obligation to Barleycorn or JB with respect to the Sirmon lawsuit.

WHEREFORE, CENTURY prays that this Honorable Court will enter judgment in its favor and against BARLEYCORN and JB, declare that CENTURY does not owe any duty to defend or indemnify BARLEYCORN or JB in the Sirmon lawsuit, and award CENTURY such other and further relief as the Court deems just and proper, including an award of costs.

## COUNT IV - "PUNITIVE, EXEMPLARY, TREBLE DAMAGES OR MULTIPLIERS OF ATTORNEY'S FEES" EXCLUSION APPLIES

32.     Century incorporates the allegations set forth within Paragraphs 1 through 18 as if fully set forth herein as Paragraph 30.

33.     The Policy excludes coverage for punitive, exemplary, treble damages or multipliers of attorney's fees. (See, Exhibit A1).

34.     To the extent that the Sirmon lawsuit seeks punitive, exemplary, treble damages or multipliers of attorney's fees, such punitive, exemplary, treble damages or multipliers of attorney's fees are excluded under the Policy.

33.     Accordingly, Century owes no defense or indemnity obligation for punitive, exemplary, treble damages or multipliers of attorneys fees sought in the Sirmon lawsuit.

WHEREFORE, CENTURY prays that the Honorable Court will enter judgment in its favor and against BARLEYCORN and JB, declare that CENTURY does not owe any duty to defend or indemnify BARLEYCORN or JB for any punitive, exemplary, treble damages or multipliers of attorney's fees sought in the Sirmon lawsuit, and award CENTURY such other and further relief as the Court deems just and proper, including an award of costs.

## COUNT V – "FAILURE TO MAINTAIN SECURE OR SAFE PREMISES" EXCLUSION APPLIES

34.     Century incorporates the allegations set forth within Paragraphs 1 through 18 as if fully set forth herein as Paragraph 34.

35.     The Policy excludes coverage for "bodily injury" or "property damage" arising out of the failure to maintain secure or safe premises. (See, Exhibit A1).

36.     To the extent that the Sirmon lawsuit involves "bodily injury" caused by an "occurrence" (which Century denies), such "bodily injury" arouse out of a failure to maintain secure or safe premises.

37.     The Policy therefore excludes coverage for the Sirmon lawsuit.

38.     Accordingly, pursuant to the Policy, Century owes no defense or indemnity obligation to Barleycorn or JB with respect to the Sirmon lawsuit.

WHEREFORE, CENTURY prays that this Honorable Court will enter judgment in its favor and against BARLEYCORN and JB, declare that CENTURY does not owe any duty to

defend or indemnify BARLEYCORN or JB in the <u>Sirmon</u> lawsuit, and award CENTURY such other and further relief as the Court deems just and proper, including an award of costs.

## COUNT VI - "LIQUOR LIABILITY" EXCLUSION APPLIES

39.     Century incorporates the allegations set forth within Paragraphs 1 through 18 as if fully set forth herein as Paragraph 39.

40.     Pursuant to the Liquor Liability exclusion, there is no duty to defend or indemnify any insured if any proximate or contributing cause of an occurrence arises out of causing or contributing to the intoxication of any person. (See, Exhibit A1).

41.     The <u>Sirmon</u> lawsuit falls within the Liquor Liability exclusion.

42.     The Policy therefore excludes coverage for the <u>Sirmon</u> lawsuit.

43.     Accordingly, pursuant to the Policy, Century owes no defense or indemnity obligation to Barleycorn or JB with respect to the <u>Sirmon</u> lawsuit.

WHEREFORE, CENTURY prays that this Honorable Court will enter judgment in its favor and against BARLEYCORN and JB, declare that CENTURY does not owe any duty to defend or indemnify BARLEYCORN or JB in the <u>Sirmon</u> lawsuit, and award CENTURY such other and further relief as the Court deems just and proper, including an award of costs.

## COUNT VII - "OTHER INSURANCE" CLAUSE APPLIES

44.     Century incorporates the allegations set forth within Paragraphs 1 through 18 as if fully set forth herein as Paragraph 44.

45.     The Policy requires that if any other valid and collectible insurance is available to the insured, the insurance issued by Century be excess over other insurance.

12

46.     Upon information and belief other insurance exists for Barleycorn and JB in the Sirmon lawsuit.    To the extent that Barleycorn and JB have other insurance, the "other insurance" provision in the Policy applies.

47.     Accordingly, Century has no duty to defend or indemnify Barleycorn or JB in the Sirmon lawsuit until such other insurance is exhausted.

WHEREFORE, CENTURY prays that the Honorable Court will enter judgment in its favor and against BARLEYCORN and JB and, declare that CENTURY does not owe any duty to defend or indemnify BARLEYCORN or JB in the Sirmon lawsuit until such other insurance is exhausted; and award CENTURY such other and further relief as the Court deems just and proper, including an award of costs.

## COUNT VIII - ASSAULT AND BATTERY EXCLUSION APPLES

48.     Century incorporates the allegations set forth within Paragraphs 1 through 18 as if fully set forth herein as Paragraph 48.

49.     The Policy excludes coverage for "bodily injury" arising out of or resulting from any actual, threatened or alleged assault or battery, failure to prevent the same, or failure to render or secure medical treatment necessitated by any assault or battery. (See, Exhibit A1).

50.     To the extent that the Sirmon lawsuit involves "bodily injury" caused by an "occurrence" (which Century denies), such "bodily injury" arouse out of actual, threatened or alleged assault or battery, failure to prevent the same, or failure to render or secure medical treatment necessitated by any assault or battery.

51.     The Policy therefore excludes coverage for the Sirmon lawsuit.

52.     Accordingly, pursuant to the Policy, Century owes no defense or indemnity obligation to Barleycorn or JB with respect to the Sirmon lawsuit.

13

WHEREFORE, CENTURY prays that this Honorable Court will enter judgment in its favor and against BARLEYCORN and JB, declare that CENTURY does not owe any duty to defend or indemnify BARLEYCORN or JB in the <u>Sirmon</u> lawsuit, and award CENTURY such other and further relief as the Court deems just and proper, including an award of costs.

## COUNT IX – ABUSE OR MOLESTATION EXCLUSION APPLIES

53.    Century incorporates the allegations set forth within Paragraphs 1 through 18 as if fully set forth herein as Paragraph 53.

54.    The Policy excludes coverage for "bodily injury" arising out of abuse or molestation. (See, Exhibit A1).

55.    To the extent that the Sirmon lawsuit involves "bodily injury" caused by an "occurrence" (which Century denies), such "bodily injury" arouse out of abuse.

56.    The Policy therefore excludes coverage for the Sirmon lawsuit.

57.    Accordingly, pursuant to the Policy, Century owes no defense or indemnity obligation to Barleycorn or JB with respect to the <u>Sirmon</u> lawsuit.

WHEREFORE, CENTURY prays that this Honorable Court will enter judgment in its favor and against BARLEYCORN and JB, declare that CENTURY does not owe any duty to defend or indemnify BARLEYCORN or JB in the <u>Sirmon</u> lawsuit, and award CENTURY such other and further relief as the Court deems just and proper, including an award of costs.

Respectfully submitted,

By: _____
One of the Attorneys for Century Surety Company

14

Michael J. Duffy
D.J. Sartorio
Shevonn K. Smith
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive
22nd Floor
Chicago, IL 60606
(312) 627-4000
(312) 627-1717 fax



# Century Surety Company

2400 CORPORATE EXCHANGE DRIVE
SUITE 290
COLUMBUS, OH 43231

**A STOCK COMPANY**

# COMMERCIAL LINES POLICY

I certify that the attached is a true and correct copy of the declarations page for policy number CCP278975. I also certify that the forms attached are true and accurate copies of the policy forms listed on the declarations page or schedule of forms and endorsements page for policy number CCP 278975.

CENTURY SURETY COMPANY

*Linda Burwell* 11/30/04

*Beverly Evans* 12/01/04

EXHIBIT
A-1

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Policy Change
Number    1

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| CCP278975 | 05/05/04 | Century Insurance Group |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| John Barleycorn | Atlantic Specialty Lines-5872B |

**COVERAGE PARTS AFFECTED**

Commercial General Liability

**CHANGES**

In consideration of the return premium of $15,799 (15,192 + 607tria), the policy is cancelled per the request of the insured.

Annual premium:  $39,998
Short rate:       x  .395
Return premium:  $15,799

All other terms and conditions remain the same.

_____
AUTHORIZED REPRESENTATIVE

IL 12 01 11 85          Copyright, Insurance Services Office, Inc., 1983
                    Copyright, ISO Commercial Risk Services, Inc., 1983



# Century Surety Company

2400 Corporate Exchange Dr., Suite 290
Columbus, Ohio 43231

### COMMERCIAL LINES POLICY
### COMMON POLICY DECLARATIONS

POLICY NO.: CCP278975

NAMED INSURED AND ADDRESS:

**JOHN BARLEYCORN**
**JOHN B., INC., J.B. AT CLARK, INC.,**
**SAMUEL SANCHEZ, FRANK MENDOZA DBA**
**658 W BELDEN**
**CHICAGO**                    IL 60614 3306

NEW
CODE NO.: 5872B
INSUREDS AGENT:
CRITCHELL-MILLER & PETRUS, INC.

188 INDUSTRIAL DRIVE
SUITE 428
ELMHURST                    IL 60126

POLICY PERIOD: From: 10/12/2003 To: 10/12/2004 at 12:01 A.M. Standard time at your mailing address shown above.

Business Description: RESTAURANT
  Individual          Joint Venture          Partnership  .          X Organization (Other than Partnership or Joint Venture)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | | **PREMIUM** |
|---|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ | 39,998.00 |

25 % of the Policy Premium is fully earned as of the effective    TOTAL    $    39,998.00
date of this policy and is not subject to return or refund.

Service of Suit (if form CCP 20 10 is attached) may be made upon:
HINSHAW, CULBERTSON & MOELMAN
400 S 9TH ST., #200, SPRINGFIELD, IL 62701

Form(s) and Endorsement(s) made a part of this policy at time of issue*:

### See Attached Schedule of Forms, CIL 15 00b 02 02

* Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.
Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing false or deceptive statement is guilty of insurance fraud.
COMPANY REPRESENTATIVE:

Countersigned By _____

ATLANTIC SPECIALTY LINES, INC.
1323 BOND STREET
SUITE 103
NAPERVILLE          IL 60563          10/13/2003 AJE

Authorized Representative

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly Authorized Agent of this Company at the Agency hereinbefore mentioned.

Secretary                    President

CSCP 10 01 01 02

COMPANY

# SCHEDULE OF FORMS AND ENDORSEMENTS

### (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and Endorsements applying to the Coverage Parts listed below and made a part of this policy at time of issue:

| Form/ Endt # | Edition Date | Title | |
|---|---|---|---|
| | | | **Total # of forms selected: 23** |

**Forms Applicable to this Coverage Part - INTERLINE-ALL COVERAGE PARTS**

CIL 15 00B 02 02...............SCHEDULE OF FORMS AND ENDT
CSCP 10 00 06 95..............POLICY JACKET
CSCP 10 01 01 02..............COMM LINES COMMON POLICY DEC
IL 00 03 04 98................CALCULATION OF PREMIUM
IL 00 17 11 98................COMMON POLICY CONDITIONS
IL 00 21 04 98................NUCLEAR ENERGY LIAB EXCL
CCP 20 10 09 00...............SERVICE OF SUIT CLAUSE
TRIA NOTICE 12 02.............NOTICE OF TERRORISM INS COV

**Forms Applicable to this Coverage Part - GENERAL LIABILITY**

CGL 15 00 01 03...............COMM GENERAL LIABILITY POLICY DEC
CGL 15 00A....................COMM GENERAL LIABILITY EXTENSION DEC
CGL 17 01 07 03...............SPECIAL EXCL AND LIMITATIONS ENDT
CGL 17 02 11 00...............ACTION OVER EXCL
CGL 17 04 02 02...............EXCL-ASSAULT AND BATTERY
CGL 17 09 03 01...............EXCL-SWIMMING POOL
CGL 17 10 11 00...............EXCL-BODILY INJURY TO IND CONTRACTORS
CG 00 01 10 01................COMM GENERAL LIABILITY COV FORM
CG 03 00 01 96................DEDUCTIBLE LIAB INS
CG 21 46 07 98................ABUSE OR MOLESTATION EXCL
CG 21 47 07 98................EMPLOYMENT-RELATED PRACTICES EXCL
CG 21 65 09 99................TOTAL POLLUTION EXCL
CG 21 69 01 02................WAR OR TERRORISM EXCL
CG 21 77 11 02................EXCEPTION TO TERRORISM EXCL
CG 24 07 01 96................PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

                     Copyright, Insurance Services Office, Inc., 1997

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modified insurance provided under the following:

    BUSINESSOWNERS POLICY
    COMMERCIAL AUTO COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    FARM COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
    TRANSPORTATION
    UNDERGROUND STORAGE TANK POLICY

1. This insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage".

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

    "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997

# COMMON POLICY CONDITIONS

All Coverage parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advanced written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate services or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

# SERVICE OF SUIT CLAUSE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
COMMERCIAL EXCESS LIABILITY COVERAGE PART

It is agreed that in the event of the failure by us to pay any amount claimed to be due hereunder, we will, at your request, submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be made upon the person or organization shown in the Policy Declarations or upon us at the address shown in the po icy jacket.

And that in any suit instituted against any one of them upon this contract, we will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

The above named are authorized and directed to accept service of process on behalf of us in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory, or district of the United States of America, which makes provision therefore, we hereby designate the Superintendent, Commissioner, or Directors of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**NOTE TO AGENT:** It is required by federal law that you provide this document to the insured or prospective insured

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act of 2002 (TRIA), effective November 26, 2002, that we have automatically included, in all our policies and quotations, insurance coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act:* The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**NOTICE OF GOVERNMENT REINSURANCE PARTICIPATION:**

Any losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by federal law (TRIA). Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The portion of your annual premium that is attributable to coverage for acts of terrorism is: $  1,538.00

Name of Insurer: CENTURY SURETY COMPANY

Policy Number: CCP278975

TRIA Notice 12/02

# Century Surety Company
## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

**Policy No:** CCP278975

**Effective Date:** 10/12/2003 **
12:01 A.M. Standard Time

**NAMED INSURED:** JOHN BARLEYCORN

**LIMITS OF INSURANCE:**

| | |
|---|---|
| General Aggregate Limit (Other than Product-Completed Operations) | $ 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| X Fire Damage Limit     Damage to Premises Rented to You | $ 50,000      Any one Fire/ Occurrence |
| Medical Expense Limit | $ 2,000      Any one Person |

**RETROACTIVE DATE: (CG 00 02, CGL 1551 or CGL 1553)**
Coverage A and B of this insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" which occurs before the retroactive date shown here: N/A

**DEDUCTIBLE:** Per Claim

$ 5,000     Bodily Injury Liability & Property Damage Liability Combined
(this deductible also applies to Personal and Advertising Injury Liability.) Deductible also applies to Supplementary Payments - Coverages A and B          ☒ Yes          ☐ No

**LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:**

| | | |
|---|---|---|
| 01 658 W BELDEN | CHICAGO | IL 60614 |
| 02 3524 N CLARK STREET | CHICAGO | IL 60657 |
| 03 NW CORNER NATIONAL PKWY & AMERICAN LANE | SCHAUMBURG | IL 60173 |
| 04 1648 W 22ND ST | CHICAGO | IL 60622 |

| PREMIUM | | RATE: | | ADVANCED PREMIUM | |
|---|---|---|---|---|---|
| St/Terr Code     Classification | Prem. Basis | Prem. Ops. | Pr/Co | Pr/Co | All Other |
| IL001 16916 RESTAURANT | S) 1,800,000 | 7.205 | .694 | 1,249.00 | 12,969.00 |
| IL001 16915 RESTAURANT | S) 2,000,000 | 10.730 | .523 | 1,046.00 | 21,466.00 |

| | | | |
|---|---|---|---|
| Audit period is Annual Unless Otherwise Stated | **Total Advance Premium** $ 2,295.00 | | $ 36,165.00 |
| | **Subtotal Coverage Premium** | 38,460.00 | |
| | **TRIA Coverage** | 1,538.00 | |
| | **Minimum Premium for This Coverage Part** $ | 39,998.00 | |

**FORMS AND ENDORSEMENTS** (other than applicable Forms and Endorsements shown elsewhere in the policy):
Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

## See Attached Schedule of Forms, CIL 15 00B 02 02

* Inclusion of Date Optional

## THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE
NAME OF THIS INSURED AND THE POLICY PERIOD          10/13/2003 AJE

CGL 15 00 01 03

# Century Surety Company

## COMMERCIAL GENERAL LIABILITY

### Extension of Policy Declarations

**POLICY NUMBER:** CCP278975

**PREMIUM:**

| State/TerrCode Classification | Prem Basis | Prem Ops | RATE Pr/Co | ADVANCE PREMIUM Pr/Co | All Other |
|---|---|---|---|---|---|
| IL001 60010 Apartment Buildings | | U) 8 | 140.358 | INCLUDED | INCLUDED | 1,123.00 |
| IL001 68707 Warehouses - private<br>- Not-For-Profit only | A) 9,000 | | 61.701 | INCLUDED | INCLUDED | 555.00 |
| IL001 45451 VACANT LAND | | T) 4 | 12.953 | INCLUDED | INCLUDED | 52.00 |

Audit Period is Annual Unless Otherwise Stated

CGL 15 00a

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL EXCLUSIONS AND LIMITATIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. In consideration of the premium charged this policy has been issued subject to the following exclusions being added to Coverages A & B:

This insurance does not apply to:

**1. Asbestos or Lead**

"Bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from the disposal, existence, handling, ingestion, inhalation, removal, sale, storage, transportation or use of:
   a. Asbestos or any material containing asbestos; or
   b. Lead, lead based paint, lead compounds or any material containing lead.

**2. Athletic or Sports Participants**

This insurance does not apply to "bodily injury" to any person while practicing for, participating in or officiating at any sports or athletic contest or exhibition that you sponsor or in which you or your employees or guests participate.

**3. Communicable Disease or Diseases**

"Bodily injury" or "personal and advertising injury" arising out of or resulting from the transmission or alleged transmission of any sexually transmitted disease or any other disease transmitted by bodily fluids or excretions.

**4. Criminal Acts**

"Bodily injury" or "property damage" arising out of or resulting from a criminal act committed by or at the direction of any named insured or additional insured.

**5. Punitive, Exemplary Treble Damages or Multipliers of Attorneys' Fees**

Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorney's fees statutorily awarded to the prevailing party.

**6. Infringement Of Copyright, Patent, Trademark or Trade Secret**

Exclusion i., Infringement of Copyright, Patent, Trademark or Trade Secret, of Coverage B. 2. Exclusions, is deleted in its entirety and replaced with the following:

Claims arising out of the infringement of copyright, patent, trademark, trade name, trade dress, trade secret or other intellectual property rights.

7. **Mold, Fungi, Virus, Bacteria, Air Quality, Contaminants, Minerals or Other Harmful Materials**

   a. "Bodily injury", "property damage", or "personal and advertising injury" arising out of, caused by, or contributed to in any way by the existence, growth, spread, dispersal, release, or escape of any mold, fungi, lichen, virus, bacteria or other growing organism that has toxic, hazardous, noxious, pathogenic, irritating or allergen qualities or characteristics. This exclusion applies to all such claims or causes of action, including allegations that any insured caused or contributed to conditions that encouraged the growth, depositing or establishment of such colonies of mold, lichen, fungi, virus, bacteria or other living or dead organism or

   b. "Bodily injury", "property damage", or "personal and advertising injury" arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating, pathogenic or allergen qualities or characteristics of indoor air regardless of cause or

   c. "Bodily injury", "property damage", or "personal and advertising injury" arising out of, caused by, or alleging to be contributed to in any way by any insured's use, sale, installation or removal of any substance, material, or other product that is either alleged or deemed to be hazardous, toxic, irritating, pathogenic or noxious in any way, or contributes in any way to an allergic reaction.

   d. "Bodily injury", "property damage", or "personal and advertising injury" arising out of, caused by, or alleging to be contributed to in any way by toxic or hazardous properties of minerals or other substances.

8. **Work or Premises Specifically Insured Elsewhere**

   Claims, demands, requests for defense, payment, or any other cost arising out of, caused by, or occurring at premises or "your work" covered under any insurance purchased by you or others on your behalf specifically for that premises or project under a Consolidated Insurance Program (CIP), Owner Controlled Insurance Program (OCIP), Contractor Controlled Insurance Program (CCIP), Wrap-Up or similar insurance program.

9. **Failure To Maintain Secure or Safe Premises**

   Claims arising out of, caused by, resulting from, or alleging, in whole or in part, any insured or additional insured's failure to thwart, foil, avoid, hinder, stop, lessen or prevent any attack, fight, assault, theft, or crime. The company has no obligation to defend or indemnify any such claims.

10. **Liquor Liability**

   Exclusion c., Liquor Liability of Coverage A. 2. Exclusions, is deleted in its entirety and replaced with the following:

   We have neither a duty to defend nor a duty to indemnify any insured if any proximate or contributing cause of an occurrence arises out of the:

   a. Causing or contributing to the intoxication of any person;

   b. Furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   c. Violation of any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies to all insureds regardless of whether you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. There is no duty to defend any aspect of the claim or "suit" and this insurance does not apply.

11. **Failure To Complete "Your Work"**

"Bodily injury", or "property damage" arising out of, caused by, resulting from, or alleged to be related to any insured's failure to complete "your work".

12. **Loss, Cost or Damages Prior To Tendered Claim**

Any claim, loss, cost or damages that are projected, estimated, or otherwise assessed or adjudicated to be likely before such claims are actually made against the insured by the claimant, or their representatives, actually suffering the alleged "bodily injury" or "property damage".

B. It is agreed that SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS is changed as follows:

1. **Item 4. Other Insurance** is deleted and entirely replaced by the following:

   **4. Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

   a. This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, umbrella, or on any other basis; unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

   b. When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

   c. When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

      (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
      (2) The total of all deductible and self insured amounts under all that other insurance.

2. **Item 5. Premium Audit** is deleted and entirely replaced by the following:

   **5. Premium Audit**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

   d. Any premium to be returned under b. above is subject to the minimum premium shown in the Declarations page as applicable to this Coverage Part.

3. **Item 9. When We Do Not Renew** is deleted in its entirety and is *not replaced*.

C. It is agreed that the following changes are made to SECTION V – DEFINITIONS:

The following definitions are deleted and entirely replaced:

1. Item 5. "Employee" is deleted in its entirety and replaced by the following:

   5. "Employee": includes a "leased worker", a "temporary worker" and a "volunteer worker".

2. Item 9. "Insured contract" is deleted in its entirety and replaced by the following:

   9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

   (4) That indemnifies another for the sole negligence of such other person or organization.

3. Item 13. "Occurrence" is deleted in its entirety and replaced with the following:

   13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All "bodily injury" or "property damage" arising out of an "occurrence" or series of related "occurrences" is deemed to take place at the time of the first such damage or injury even though the nature and extent of such damage or injury may change; and even though the damage may be continuous, progressive, cumulative, changing or evolving; and even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harmful conditions.

4. Item 14. "Personal and advertising injury" is deleted in its entirety and replaced with the following:

   14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; or

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

5. Item 17. "Property Damage" is deleted in its entirety and replaced with the following.

   17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

   For the purposes of this insurance, "property damage" is not physical injury to tangible property, any resultant loss of use of tangible property, nor loss of use of tangible property that is not physically injured that arises out of failure to complete or abandonment of "your work".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ACTION OVER EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that the following change is made to Coverage A. 2. Exclusions:

Exclusion **e. Employer's Liability** is deleted in its entirety and replaced with the following:

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the named insured arising out of and in the course of:
  (a) Employment by the named insured; or
  (b) Performing duties related to the conduct of the named insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

(1) Whether the named insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# EXCLUSION - ASSAULT AND BATTERY

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from:

   **(a)** any actual, threatened or alleged assault or battery;

   **(b)** the failure of any insured or anyone else for whom any insured is or could be held legally liable to prevent or suppress any assault or battery;

   **(c)** the failure of any insured or anyone else for whom any insured is or could be held legally liable to render or secure medical treatment necessitated by any assault or battery;

   **(d)** the rendering of medical treatment by any insured or anyone else for whom any insured is or could be held legally liable that was necessitated by any assault or battery;

   **(e)** the negligent:
       **(i)** employment;
       **(ii)** investigation;
       **(iii)** supervision;
       **(iv)** training;
       **(v)** retention;
   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by **1. (a), (b), (c) or (d)** above;

   **(f)** any other cause of action or claim arising out of or as a result of **1. (a), (b), (c), (d) or (e)** above.

2. We shall have no duty to defend or indemnify any claim, demand, suit, action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding seeking damages, equitable relief, injunctive relief, or administrative relief where:

   **(a)** any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause.

   **(b)** any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury.

   **(c)** any actual or alleged injury arises out of assault or battery as a concurrent cause of injury, regardless of whether the assault or battery is the proximate cause of injury.

3. For the purposes of this endorsement the words assault and battery are intended to include, but are not limited to, sexual assault.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - SWIMMING POOL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, operation, maintenance, existence or use of a swimming pool. This exclusion applies whether such use is authorized or unauthorized.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - BODILY INJURY TO
# INDEPENDENT CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that this insurance does not apply to "bodily injury" to:

(1) Any independent contractor or the "employee" of any independent contractor while such independent contractor or their "employee" is working on behalf of any insured; or

(2) The spouse, child, parent, brother or sister of such independent contractor or "employee" of the independent contractor as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000

CG 00 01 10 01    □

## f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© ISO Properties, Inc., 2000

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of·

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty ϶ defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

#### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

#### b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

#### c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

#### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

#### e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

#### f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

#### g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

#### h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

#### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

#### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

#### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (1) The accident takes place in the "coverage territory" and during the policy period;

   (2) The expenses are incurred and reported to us within one year of the date of the accident; and

   (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

   To any insured, except "volunteer workers".

   b. **Hired Person**

   To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

   To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers Compensation And Similar Laws**

   To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

   To a person injured while taking part in athletics.

   f. **Products-Completed Operations Hazard**

   Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

   Excluded under Coverage A.

   h. **War**

   Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

© ISO Properties, Inc., 2000

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000 CG 00 01 10 01 □

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

   **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

     **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

     **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

     **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

     **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

   **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2000

CG 00 01 10 01

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing,

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

 © ISO Properties, Inc., 2000 ☐

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

   (a) Snow removal;

   (b) Road maintenance, but not construction or resurfacing; or

   (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

        **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000

❑

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
|---|---|---|---|
| | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $ | | $ |
| OR | | | |
| Property Damage Liability | $ | | $ |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $    5,000 | | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

   (1) "Bodily injury";

   (2) "Property damage"; or

   (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

CG 03 00 01 96        Copyright, Insurance Services Offices, Inc., 1994        Hart Forms & Services
Reorder No 14-2180

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

   (1) "Bodily injury";

   (2) "Property damage"; or

   (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages, and

   2. Your duties in the event of an "occurrence", claim, or "suit"

   apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.,** **Exclusions** of Section I – **Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of Section I – **Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:

   a. Employment;

   b. Investigation;

   c. Supervision;

   d. Reporting to the proper authorities, or failure to so report; or

   e. Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

 Copyright, Insurance Services Office, Inc., 1997 ☐

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies.

  **(1)** Whether the insured may be liable as an employer or in any other capacity; and

  **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.,** **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

  **(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

  **(1)** Whether the insured may be liable as an employer or in any other capacity; and

  **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION
# WITH A BUILDING HEATING EQUIPMENT EXCEPTION
# AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

(a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(ii) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 1998

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion i. under Paragraph **2.**, **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War Or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death; or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of or impairment of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

© ISO Properties, Inc., 2001

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**War Or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death; or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of cr impair nent of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

 © ISO Properties, Inc., 2001 **CG 21 69 01 02** ☐

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. Exclusion **h.** under Paragraph 2., **Exclusions** of **Section I – Coverage C – Medical Payments** does not apply.

D. The following definition is added to the **Definitions** Section:

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

 © ISO Properties, Inc., 2001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCEPTION TO TERRORISM EXCLUSION FOR CERTIFIED ACTS OF TERRORISM; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**A.** With respect to any exclusion of terrorism in this Coverage Part or attached to this Coverage Part by endorsement, such exclusion does not apply to a "certified act of terrorism".

That exclusion also does not apply to an act which meets the criteria set forth in Paragraph **2.** of the definition of "certified act of terrorism", when such act resulted in aggregate losses of $5 million or less.

**B.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**C.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**1.** The act resulted in aggregate losses in excess of $5 million; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2002

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Description of Premises and Operations:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph a. of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

Copyright, Insurance Services Office, Inc., 1994

Hart Forms & Services
Reorder No 14-2188

RPW/dat    04-2166

**T S M & P**

RECEIVED

JUL 0 7 2005

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

MATTHEW SIRMON,                          )
                                         )
            Plaintiff,                   )
                                         )
     v.                                  )        No.   04 L 12564
                                         )
JOHN B. INC., d/b/a JOHN BARLEYCORN and  )
J.B. at CLARK, INC., an Illinois corporation, )
                                         )
            Defendants.                  )

DIARIED_____ BOOKETED__MCC
ATTY: 5207-4-29-421

### FIRST AMENDED COMPLAINT AT LAW

### COUNT I – NEGLIGENCE

Plaintiff, MATTHEW SIRMON, by and through his attorneys, CLIFFORD LAW OFFICES,

P.C., complaining of Defendant, JOHN B. INC., d/b/a JOHN BARLEYCORN ("BARLEYCORN"),

states as follows:

1.    On and before November 8, 2003, Defendant, BARLEYCORN, owned, operated,

managed, maintained and/or controlled a bar/dram shop located at 3524 North Clark Street in the

City of Chicago, County of Cook, and State of Illinois.

2.    On and before November 8, 2003, Defendant, BARLEYCORN, held out for use by

patron-invitees the building and facilities at said address.

3.    On and before November 8, 2003, Defendant, BARLEYCORN, employed certain

bouncers and/or security personnel.

4.    On and before November 8, 2003, said bouncers and/or security personnel were

employees and/or agents of the Defendant, BARLEYCORN.



**EXHIBIT**

B-1

5. On and before November 8, 2003, said bouncers and/or security personnel were under the instruction, control and/or direction of Defendant, BARLEYCORN.

6. At all times relevant hereto, said bouncers and/or security personnel were acting within the scope of their employment and/or agency for Defendant, BARLEYCORN.

7. On November 8, 2003, the Plaintiff, MATTHEW SIRMON, was a patron of the Defendant, BARLEYCORN's, place of business and was legally on said premises.

8. On November 8, 2003, while a patron at Defendant, BARLEYCORN's, place of business, and without provocation or cause, whatsoever, Plaintiff, MATTHEW SIRMON, was grabbed by the bouncers and/or security personnel, held down, punched and choked repeatedly, while said bouncers and/or security personnel were acting within the scope of their employment for Defendant, BARLEYCORN.

9. At all times mentioned herein, the Defendant, BARLEYCORN, owed a duty to the Plaintiff, MATTHEW SIRMON, to operate said premises and control their employees including their bouncers and/or security personnel, so as to not cause injury to the Plaintiff, MATTHEW SIRMON.

10. At all times relevant hereto, Defendant, BARLEYCORN, had a duty to protect their patrons, including the Plaintiff, MATTHEW SIRMON, from physical harm by persons on the premises, including but not limited to the bouncers and/or security personnel.

11. On November 8, 2003, Defendant, BARLEYCORN, knew or in the exercise of reasonable care should have known that the bouncers and/or security personnel were presenting a danger to the Plaintiff.

2

12.     On November 8, 2003, notwithstanding their duty to the Plaintiff, MATTHEW

SIRMON, the Defendant, BARLEYCORN, was negligent in one or more of the following respects:

   a.   Failed to implement procedures and policies to prevent bouncers and/or
        security personal from the use excessive force in the handling of Plaintiff;

   b.   Failed to implement procedures and policies to quickly respond to situations
        where bouncers and/or security personal presented a danger to the Plaintiff;

   c.   Failed to remove said bouncers and/or security personnel from the premises
        when they knew or in the exercise of reasonable care should have known that
        said bouncers and/or security personnel were presenting a danger to the
        Plaintiff;

   d.   Failed to intervene on the Plaintiffs' behalf when they knew or in the exercise
        of reasonable care should have known that the bouncers and/or security
        personnel were presenting a danger to the Plaintiff;

   e.   Failed to detain said bouncers and/or security personnel who attacked the
        Plaintiff, thereby denying the Plaintiff an opportunity to leave said premises
        prior to the attack when they knew or in the exercise of reasonable care
        should have known that said bouncers and/or security personnel were
        presenting a danger to the Plaintiff;

   f.   Failed to warn the Plaintiff when they knew or in the exercise of reasonable
        care should have know.1 that the bouncers and/or security pers )nnel vere
        presenting a danger to the Plaintiff;

   g.   Allowed the bouncers and/or security personnel to use excessive force in the
        handling of the Plaintiff, MATTHEW SIRMON; and,

   h.   Failed to summon the police.

13.     As a direct and proximate result of one or more of the aforementioned acts and/or

omissions, Plaintiff, MATTHEW SIRMON, suffered injuries of a personal, permanent and pecuniary

nature.

WHEREFORE, Plaintiff, MATTHEW SIRMON, demands judgment against Defendant, JOHN B. INC., d/b/a JOHN BARLEYCORN, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT II – BATTERY

Plaintiff, MATTHEW SIRMON, by and through his attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant, JOHN B. INC., d/b/a JOHN BARLEYCORN ("BARLEYCORN"), states as follows:

1. On and before November 8, 2003, Defendant, BARLEYCORN, owned, operated, managed, maintained and/or controlled a bar/dram shop located at 3524 North Clark Street in the City of Chicago, County of Cook, and State of Illinois.

2. On and before November 8, 2003, Defendant, BARLEYCORN, held out for use by patron-invitees the building and facilities at said address.

3. On and before November 8, 2003, Defendant, BARLEYCORN, employed certain bouncers and/or security personnel.

4. On and before November 8, 2003, said bouncers and/or security personnel were employees and/or agents of the Defendant, BARLEYCORN.

5. On and before November 8, 2003, said bouncers and/or security personnel were under the instruction, control and/or direction of Defendant, BARLEYCORN.

6. At all times relevant hereto, said bouncers and/or security personnel were acting within the scope of their employment and/or agency for Defendant, BARLEYCORN.

7. On November 8, 2003, the Plaintiff, MATTHEW SIRMON, was a patron of the Defendant, BARLEYCORN's, place of business and was legally on said premises.

4

8.     On November 8, 2003, while a patron at Defendant, BARLEYCORN's, place of business, and without provocation or cause, whatsoever, Plaintiff, MATTHEW SIRMON, was grabbed by the bouncers and/or security personnel, held down, punched and choked repeatedly, while said bouncers and/or security personnel were acting within the scope of their employment for Defendant, BARLEYCORN.

10.     In doing the acts alleged above, Defendant, BARLEYCORN, by and through its duly authorized agents, committed the intentional tort of battery.

11.     As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff, MATTHEW SIRMON, suffered injuries of a personal, permanent and pecuniary nature..

WHEREFORE, Plaintiff, MATTHEW SIRMON, demands judgment against Defendant, JOHN B. INC., d/b/a JOHN BARLEYCORN, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT III - NEGLIGENT HIRING AND SUPERVISION

Plaintiff, MATTHEW SIRMON, by and through his attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant, JOHN B. INC., d/b/a JOHN BARLEYCORN ("BARLEYCORN"), states as follows:

1.     On and before November 8, 2003, Defendant, BARLEYCORN, owned, operated, managed, maintained and/or controlled a bar/dram shop located at 3524 North Clark Street in the City of Chicago, County of Cook, and State of Illinois.

2.     On and before November 8, 2003, Defendant, BARLEYCORN, held out for use by patron-invitees the building and facilities at said address.

5

3. On and before November 8, 2003, Defendant, BARLEYCORN, employed certain bouncers and/or security personnel.

4. On and before November 8, 2003, said bouncers and/or security personnel were employees and/or agents of the Defendant, BARLEYCORN.

5. On and before November 8, 2003, said bouncers and/or security personnel were under the instruction, control and/or direction of Defendant, BARLEYCORN.

6. At all times relevant hereto, said bouncers and/or security personnel were acting within the scope of their employment and/or agency for Defendant, BARLEYCORN.

7. On November 8, 2003, the Plaintiff, MATTHEW SIRMON, was a patron of the Defendant, BARLEYCORN's, place of business and was legally on said premises.

8. On November 8, 2003, while a patron at Defendant, BARLEYCORN's, place of business, and without provocation or cause, whatsoever, Plaintiff, MATTHEW SIRMON, was grabbed by the bouncers and/or security personnel, held down, punched and choked repeatedly, while said bouncers and/or security personnel were acting within the scope of their employment for Defendant, BARLEYCORN.

9. At all times mentioned herein, the Defendant, BARLEYCORN, owed a duty to the Plaintiff, MATTHEW SIRMON, to operate said premises and control their employees including their bouncers and/or security personnel, so as to not cause injury to the Plaintiff, MATTHEW SIRMON.

10. At all times relevant hereto, Defendant, BARLEYCORN, had a duty to protect their patrons, including the Plaintiff, MATTHEW SIRMON, from physical harm by persons on the premises, including but not limited to the bouncers and/or security personnel.

11. Notwithstanding said duty, the Defendant, BARLEYCORN, through their agents and employees, including the bouncers and/or security personnel, were then and there guilty of one or more of the following acts and/or omissions:

a. Carelessly and negligently hired employees in the bouncer capacity;

b. Carelessly and negligently permitted employees to serve in the capacity of bouncers and/or security, without any prior verification of their training and/or experience as bouncers and/or security;

c. Carelessly and negligently permitted said bouncers and/or security personnel to continue in their employ after prior incidents of excessive force and/or battery had been perpetrated by the same bouncers and/or security personnel. Although the Defendant knew, or in the exercise of ordinary care should have known, that said bouncers were a danger to patrons;

d. Carelessly and negligently allowed their employee bouncers and/or security personnel to attack and beat the Plaintiff, MATTHEW SIRMON;

e. Carelessly and negligently failed to train said employees in the use of force and control of its patrons, although in the use of ordinary care should have known, that such failure was likely to result in injury to patrons of the business, including the Plaintiff, MATTHEW SIRMON;

f. Failed to properly supervise its bouncers and/or security personnel and allowed its bouncers and/or security personnel to attack and beat the Plaintiff while they were in the employ of BARLEYCORN; and,

g. Carelessly and negligently failed to warn the patrons, including the Plaintiff, MATTHEW SIRMON of the dangerous propensities of said bouncers and/or security personnel, although the Defendants knew or in the exercise of ordinary care should have known, that such warning was reasonably necessary to prevent injury to patrons, including the Plaintiff, MATTHEW SIRMON.

12. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff, MATTHEW SIRMON, suffered injuries of a personal, permanent and pecuniary nature.

7

WHEREFORE, Plaintiff, MATTHEW SIRMON, demands judgment against Defendant, JOHN B. INC., d/b/a JOHN BARLEYCORN, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT IV - DRAM SHOP

Plaintiff, MATTHEW SIRMON, by and through his attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant, JOHN B. INC., d/b/a JOHN BARLEYCORN ("BARLEYCORN"), states as follows:

1.      On November 8, 2003, Defendant, BARLEYCORN, owned and operated a tavern or liquor dispensing establishment on the premises commonly known and described as 3524 North Clark Street in the City of Chicago, County of Cook, State of Illinois.

2.      On or about November 8, 2003, Defendant, BARLEYCORN, were engaged in the business of dispensing alcoholic liquor to the public.

3.      On or about November 8, 2003, Plaintiff, MATTHEW SIRMON, was an invitee on the premises commonly known and described as 3524 North Clark Street in the City of Chicago, County of Cook, State of Illinois.

4.      On or about November 8, 2003, certain unknown bouncers and/or security personnel were engaged in providing security services for BARLEYCORN.

5.      On or about November 8, 2003, Defendant, BARLEYCORN, and their tavern and liquor dispensing establishment, by and through their authorized agents and/or servants, sold or gave certain unknown bouncers and/or security personnel alcoholic liquors which caused their intoxication.

8

6. On or about November 8, 2003, Defendant, BARLEYCORN, by and through their duly authorized agents and servants were aware that certain unknown bouncers and/or security personnel were intoxicated.

7. On or about November 8, 2003, Defendant, BARLEYCORN, by and through their duly authorized agents and/or servants continued to serve the unknown bouncers and/or security personnel alcoholic beverages despite their awareness they were intoxicated.

8. On or about November 8, 2003, certain unknown bouncers and/or security personnel grabbed the Plaintiff, MATTHEW SIRMON, held him down and struck him repeatedly.

9. As a direct and proximate result of the intoxication of certain unknown bouncers and/or security personnel, Plaintiff, MATTHEW SIRMON, sustained injuries of a personal, pecuniary and permanent nature.

10. MATTHEW SIRMON brings this action pursuant to 235 ILCS 5/6-21 commonly known as the Dram Shop Act in Illinois.

WHEREFORE, Plaintiff, MATTHEW SIRMON, demand judgment against Defendant, JOHN B. INC., d/b/a JOHN BARLEYCORN, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT V – NEGLIGENCE

Plaintiff, MATTHEW SIRMON, by and through his attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant, J.B. at CLARK, INC., an Illinois corporation ("J.B. at CLARK"), states as follows:

9

1.      On and before November 8, 2003, Defendant, J.B. at CLARK, owned, operated, managed, maintained and/or controlled a bar/dram shop located at 3524 North Clark Street in the City of Chicago, County of Cook, and State of Illinois.

2.      On and before November 8, 2003, Defendant, J.B. at CLARK, held out for use by patron-invitees the building and facilities at said address.

3.      On and before November 8, 2003, Defendant, J.B. at CLARK, employed certain bouncers and/or security personnel.

4.      On and before November 8, 2003, said bouncers and/or security personnel were employees and/or agents of the Defendant, J.B. at CLARK.

5.      On and before November 8, 2003, said bouncers and/or security personnel were under the instruction, control and/or direction of Defendant, J.B. at CLARK.·

6.      At all times relevant hereto, said bouncers and/or security personnel were acting within the scope of their employment and/or agency for Defendant, J.B. at CLARK.

7.      On No ember 8, 2003, the Plaintiff, MATTHEW SIRMON, was a patron o. the Defendant, J.B. at CLARK's, place of business and was legally on said premises.

8.      On November 8, 2003, while a patron at Defendant, J.B. at CLARK's, place of business, and without provocation or cause, whatsoever, Plaintiff, MATTHEW SIRMON, was grabbed by the bouncers and/or security personnel, held down, punched and choked repeatedly, while said bouncers and/or security personnel were acting within the scope of their employment for Defendant, J.B. at CLARK.

9.      At all times mentioned herein, the Defendant, J.B. at CLARK, owed a duty to the Plaintiff, MATTHEW SIRMON,  to operate said premises and control their employees including

10

their bouncers and/or security personnel, so as to not cause injury to the Plaintiff, MATTHEW SIRMON.

10. At all times relevant hereto, Defendant, J.B. at CLARK, had a duty to protect their patrons, including the Plaintiff, MATTHEW SIRMON, from physical harm by persons on the premises, including but not limited to the bouncers and/or security personnel.

11. On November 8, 2003, Defendant, J.B. at CLARK, knew or in the exercise of reasonable care should have known that the bouncers and/or security personnel were presenting a danger to the Plaintiff.

12. On November 8, 2003, notwithstanding their duty to the Plaintiff, MATTHEW SIRMON, the Defendant, J.B. at CLARK, was negligent in one or more of the following respects:

    a. Failed to implement procedures and policies to prevent bouncers and/or security personal from the use excessive force in the handling of Plaintiff;

    b. Failed to implement procedures and policies to quickly respond to situations where bouncers and/or security personal presented a danger to the Plaintiff;

    c. Failed to remove said bouncers and/or security personnel from the premises when they knew or in the exercise of reasonable care should have known that said bouncers and/or security personnel were presenting a danger to the Plaintiff;

    d. Failed to intervene on the Plaintiffs' behalf when they knew or in the exercise of reasonable care should have known that the bouncers and/or security personnel were presenting a danger to the Plaintiff;

    e. Failed to detain said bouncers and/or security personnel who attacked the Plaintiff, thereby denying the Plaintiff an opportunity to leave said premises prior to the attack when they knew or in the exercise of reasonable care should have known that said bouncers and/or security personnel were presenting a danger to the Plaintiff;

11

f.     Failed to warn the Plaintiff when they knew or in the exercise of reasonable care should have known that the bouncers and/or security personnel were presenting a danger to the Plaintiff;

g.     Allowed the bouncers and/or security personnel to use excessive force in the handling of the Plaintiff, MATTHEW SIRMON; and,

h.     Failed to summon the police.

13.     As a direct and proximate result of one or more of the aforementioned acts and/or omissions, Plaintiff, MATTHEW SIRMON, suffered injuries of a personal, permanent and pecuniary nature.

WHEREFORE, Plaintiff, MATTHEW SIRMON, demands judgment against Defendant, J.B. at CLARK, INC., an Illinois corporation, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

### COUNT VI – BATTERY

Plaintiff, MATTHEW SIRMON, by and through his attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant, J.B. at CLARK, INC., an Illinois corporation ("J.B. at CLARK"), states as follows:

1.     On and before November 8, 2003, Defendant, J.B. at CLARK, owned, operated, managed, maintained and/or controlled a bar/dram shop located at 3524 North Clark Street in the City of Chicago, County of Cook, and State of Illinois.

2.     On and before November 8, 2003, Defendant, J.B. at CLARK, held out for use by patron-invitees the building and facilities at said address.

3.     On and before November 8, 2003, Defendant, J.B. at CLARK, employed certain bouncers and/or security personnel.

4. On and before November 8, 2003, said bouncers and/or security personnel were employees and/or agents of the Defendant, J.B. at CLARK.

5. On and before November 8, 2003, said bouncers and/or security personnel were under the instruction, control and/or direction of Defendant, J.B. at CLARK.

6. At all times relevant hereto, said bouncers and/or security personnel were acting within the scope of their employment and/or agency for Defendant, J.B. at CLARK.

7. On November 8, 2003, the Plaintiff, MATTHEW SIRMON, was a patron of the Defendant, J.B. at CLARK's, place of business and was legally on said premises.

8. On November 8, 2003, while a patron at Defendant, J.B. at CLARK's, place of business, and without provocation or cause, whatsoever, Plaintiff, MATTHEW SIRMON, was grabbed by the bouncers and/or security personnel, held down, punched and choked repeatedly, while said bouncers and/or security personnel were acting within the scope of their employment for Defendant, J.B. at CLARK.

10. In doing the acts alleged above, Defendant, J.B. at CLARK, by and through its duly authorized agents, committed the intentional tort of battery.

11. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff, MATTHEW SIRMON, suffered injuries of a personal, permanent and pecuniary nature..

WHEREFORE, Plaintiff, MATTHEW SIRMON, demands judgment against Defendant, J.B. at CLARK, INC., an Illinois corporation, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT VII - NEGLIGENT HIRING AND SUPERVISION

Plaintiff, MATTHEW SIRMON, by and through his attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant, J.B. at CLARK, INC., an Illinois corporation ("J.B. at CLARK"), states as follows:

1.     On and before November 8, 2003, Defendant, J.B. at CLARK, owned, operated, managed, maintained and/or controlled a bar/dram shop located at 3524 North Clark Street in the City of Chicago, County of Cook, and State of Illinois.

2.     On and before November 8, 2003, Defendant, J.B. at CLARK, held out for use by patron-invitees the building and facilities at said address.

3.     On and before November 8, 2003, Defendant, J.B. at CLARK, employed certain bouncers and/or security personnel.

4.     On and before November 8, 2003, said bouncers and/or security personnel were employees and/or agents of the Defendant, J.B. at CLARK.

5.     On and before November 8, 2003, said bouncers and/or security personnel were under the instruction, control and/or direction of Defendant, J.B. at CLARK.

6.     At all times relevant hereto, said bouncers and/or security personnel were acting within the scope of their employment and/or agency for Defendant, J.B. at CLARK.

7.     On November 8, 2003, the Plaintiff, MATTHEW SIRMON, was a patron of the Defendant, J.B. at CLARK's, place of business and was legally on said premises.

8.     On November 8, 2003, while a patron at Defendant, J.B. at CLARK's, place of business, and without provocation or cause, whatsoever, Plaintiff, MATTHEW SIRMON, was grabbed by the bouncers and/or security personnel, held down, punched and choked repeatedly,

14

while said bouncers and/or security personnel were acting within the scope of their employment for Defendant, J.B. at CLARK.

9.    At all times mentioned herein, the Defendant, J.B. at CLARK, owed a duty to the Plaintiff, MATTHEW SIRMON,  to operate said premises and control their employees including their bouncers and/or security personnel, so as to not cause injury to the Plaintiff, MATTHEW SIRMON.

10.    At all times relevant hereto, Defendant, J.B. at CLARK, had a duty to protect their patrons, including the Plaintiff,  MATTHEW SIRMON, from physical harm by persons on the premises, including but not limited to the bouncers and/or security personnel.

11.    Notwithstanding said duty, the Defendant, J.B. at CLARK, through their agents and employees, including the bouncers and/or security personnel, were then and there guilty of one or more of the following acts and/or omissions:

a.    Carelessly and negligently hired employees in the bouncer capacity;

b.    Carelessly and negligently permitted employees to serve in the capacity of bouncers and/or security, without any prior verification of their training and/or experience as bouncers and/or security;

c.    Carelessly and negligently permitted said bouncers and/or security personnel to continue in their employ after prior incidents of excessive force and/or battery had been perpetrated by the same bouncers and/or security personnel. Although the Defendant knew, or in the exercise of ordinary care should have known, that said bouncers were a danger to patrons;

d.    Carelessly and negligently allowed their employee bouncers and/or security personnel to attack and beat the Plaintiff, MATTHEW SIRMON;

e.    Carelessly and negligently failed to train said employees in the use of force and control of its patrons, although in the use of ordinary care should have known, that such failure was likely to result in injury to patrons of the business, including the Plaintiff, MATTHEW SIRMON;

15

f. Failed to properly supervise its bouncers and/or security personnel and allowed its bouncers and/or security personnel to attack and beat the Plaintiff while they were in the employ of J.B. at CLARK; and,

g. Carelessly and negligently failed to warn the patrons, including the Plaintiff, MATTHEW SIRMON of the dangerous propensities of said bouncers and/or security personnel, although the Defendants knew or in the exercise of ordinary care should have known, that such warning was reasonably necessary to prevent injury to patrons, including the Plaintiff, MATTHEW SIRMON.

12. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Plaintiff, MATTHEW SIRMON, suffered injuries of a personal, permanent and pecuniary nature.

WHEREFORE, Plaintiff, MATTHEW SIRMON, demands judgment against Defendant, J.B. at CLARK, INC., an Illinois corporation, for an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

## COUNT VIII - DRAM SHOP

Plaintiff, MATTHEW SIRMON, by and through his attorneys, CLIFFORD LAW OFFICES, P.C., complaining of Defendant, J.B. at CLARK, INC., an Illinois corporation ("J.B. at CLARK"), states as follows:

1. On November 8, 2003, Defendant, J.B. at CLARK, owned and operated a tavern or liquor dispensing establishment on the premises commonly known and described as 3524 North Clark Street in the City of Chicago, County of Cook, State of Illinois.

2. On or about November 8, 2003, Defendant, J.B. at CLARK, were engaged in the business of dispensing alcoholic liquor to the public.

16

3. On or about November 8, 2003, Plaintiff, MATTHEW SIRMON, was an invitee on the premises commonly known and described as 3524 North Clark Street in the City of Chicago, County of Cook, State of Illinois.

4. On or about November 8, 2003, certain unknown bouncers and/or security personnel were engaged in providing security services for J.B. at CLARK.

5. On or about November 8, 2003, Defendant, J.B. at CLARK, and their tavern and liquor dispensing establishment, by and through their authorized agents and/or servants, sold or gave certain unknown bouncers and/or security personnel alcoholic liquors which caused their intoxication.

6. On or about November 8, 2003, Defendant, J.B. at CLARK, by and through their duly authorized agents and servants were aware that certain unknown bouncers and/or security personnel were intoxicated.

7. On or about November 8, 2003, Defendant, J.B. at CLARK, by and through their duly authorized agents and/c r servants continued to serve the unknown bouncers and/or security perso nnel alcoholic beverages despite their awareness they were intoxicated.

8. On or about November 8, 2003, certain unknown bouncers and/or security personnel grabbed the Plaintiff, MATTHEW SIRMON, held him down and struck him repeatedly.

9. As a direct and proximate result of the intoxication of certain unknown bouncers and/or security personnel, Plaintiff, MATTHEW SIRMON, sustained injuries of a personal, pecuniary and permanent nature.

10. MATTHEW SIRMON brings this action pursuant to 235 ILCS 5/6-21 commonly known as the Dram Shop Act in Illinois.

17

WHEREFORE, Plaintiff, MATTHEW SIRMON, demands judgment against Defendant, J.B.

at CLARK, INC., an Illinois corporation, for an amount in excess of FIFTY THOUSAND

DOLLARS ($50,000.00).

_____

Attorney for Plaintiff

Robert P. Walsh
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street
31st Floor
Chicago, Illinois 60602
(312) 899-9090
Firm I.D. 32640